IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANITA BROWN O/B/O, <br> BENNY M. BROWN, JR., DECEASED <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of the <br> Social Security Administration, <br><br> Defendant.[1] | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. CIV-20-692-STE <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's[2] applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  Any reference to "Plaintiff" throughout this Memorandum will refer to the claimant, Benny M. Brown, Jr., who is now deceased.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-30). The Appeals Council denied Plaintiff's request for review. (TR. 6-8). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 24, 2015, the alleged onset date. (TR. 19). At step two, the ALJ determined Mr. Brown suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spines; chronic obstructive pulmonary disease; traumatic partial amputation of two fingers on the left hand; bilateral degenerative joint disease in the knees; and neuropathy. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 23).

At step four, the ALJ concluded that Mr. Brown retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can frequently grip, handle, finger, and feel with the dominant right hand; occasionally grip, handle, finger, and feel with the nondominant left hand; must avoid concentrated exposure to fumes,

odors, dusts, gases, and poor ventilation; must avoid exposure to workplace hazards, such as moving mechanical parts and unprotected heights; and must never climb ladders, ropes, or scaffolds.

(TR. 24).

With this RFC, the ALJ concluded that Mr. Brown could not perform his past relevant work. (TR. 28). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 128). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 129). At step five, the ALJ adopted the VE's testimony and concluded that Mr. Brown was not disabled based on his ability to perform the identified jobs. (TR. 29-30).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges error in the ALJ's evaluation of: (1) Plaintiff's pain/subjective allegations and (2) mental health. (ECF Nos. 21:4-15, 26:3-10).[3]

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence"

---

[3] In the opening brief, Mr. Brown presents his allegations of error as two-fold. In his first proposition, Plaintiff alleges error in the ALJ's consideration of Plaintiff's pain and mental health. (ECF No. 21:4-12). In his second proposition, Mr. Brown argues "the ALJ failed to properly assess the consistency of Mr. Brown's complaints with the evidence of record" due to the alleged errors in proposition one. (ECF No. 21:14-15). As will be discussed more thoroughly below, the ALJ's evaluation of a claimant's allegations of pain and consistency of his allegations with other evidence in the record are part of a single analysis, as set forth in Social Security Ruling 16-3p. *See infra*. Thus, the Court will treat the allegations as a single challenge.

standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. NO ERROR IN THE ALJ'S CONSIDERATION OF PLAINTIFF'S PAIN AND SUBJECTIVE ALLEGATIONS

Mr. Brown alleges that the ALJ erred in considering Plaintiff's allegations of pain and the consistency of his statements. (ECF No. 21:4-12, 14-15, 26:6-7). The Court disagrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations, including pain. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's

ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B. The ALJ's Evaluation of Plaintiff's Pain/Subjective Allegations

In formulating the RFC, the ALJ stated that he had considered Mr. Brown's pain and the consistency of his subjective allegations with other evidence of record. (TR.

24). The ALJ then: (1) set forth the two-step framework under SSR 16-3p, (2) summarized Plaintiff's hearing testimony, and stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent for a number of reasons, discussed in greater depth below. Instead, the residual functional capacity reached herein is consistent with the objective medical evidence, clinical findings, longitudinal medical history, and observations of the claimant's treating and examining providers during this time.

(TR. 25). By means of explanation, the ALJ then discussed, in detail, Plaintiff's allegations of pain in his back, knees, and hands. (TR. 25-27). As support for his findings, the ALJ cited objective evidence, Plaintiff's allegations, attempts at treatment including medication and surgical intervention, medical findings on examination, inconsistencies in the record which undermined Plaintiff's statements regarding the intensity of pain, Plaintiff's daily activities, medical opinions, and statements from a third-party. (TR. 25-28).

First, the ALJ discussed Mr. Brown's neck and back pain. In doing so, the ALJ cited MRIs of Plaintiff's lumbar spine dated September 28, 2016 and February 12, 2018 which showed mild lower lumbar spondylosis. (TR. 25-26, 509-510, 618-619). The ALJ also cited an MRI of Plaintiff's cervical spine from September 28, 2016 which revealed moderate generalized cervical spondylosis, with bilateral neural foraminal encroachment at the C3-C4, C5-C6, C6-C7 levels, and mild to moderate central spinal stenosis formed at the C5-C6 level with mild cord flattening and no evidence of cord signal abnormality.

(TR. 26, 551-512). The ALJ then cited Plaintiff's treatment for neck and back pain through pain management, but also noted that "the medical evidence of record does not reveal the claimant has been recommended more than conservative treatment for his back and neck pain." (TR. 26). Indeed, the majority of the records concerning Plaintiff's neck and back pain are from pain management physician Dr. Paul Reel, who treated Plaintiff's neck and back pain with narcotics. (TR. 443-499, 541-553).

Next, the ALJ discussed Plaintiff's knee pain. The ALJ began by noting an October 2017 MRI of Plaintiff's right knee which showed a complex tear of the medial meniscus and a November 7, 2017 surgical repair of the right knee. (TR. 26, 621, 643-644). The ALJ then mentioned a November 20, 2017 follow up appointment where the surgeon noted that Plaintiff exhibited full range of motion of the right knee and reported feeling "much better" overall with some "dull achy pain" remaining. (TR. 26, 650). For this pain, the physician declined a refill of Percocet, but ordered Plaintiff to continue taking Cymbalta, which was noted by the ALJ. (TR. 26, 650). Regarding Plaintiff's left knee, the ALJ cited a February 2018 MRI which revealed moderate joint effusion with a moderate sized Baker's cyst, osteoarthritis, and a medial meniscus tear. (TR. 26, 620). As noted by the ALJ, in April 2018 Plaintiff's surgeon recommended arthroscopic repair of the left knee, which, at the May 11, 2018 hearing, Plaintiff confirmed had occurred. (TR. 26, 119). Lastly, the ALJ relied on a lack of medical restrictions related to Plaintiff's knees or requirements to wear a brace on either knee. (TR. 26, 608).

Finally, the ALJ extensively discussed Plaintiff's hand/finger pain. The ALJ acknowledged Plaintiff's testimony that he lacks grip strength and has difficulties with fine motor manipulation owing to partial digit amputation on his nondominant hand. (TR. 26-27). Despite the finger amputation, the ALJ noted that Plaintiff had continued to work. (TR. 27, 301-312). The ALJ also noted that Plaintiff sought treatment for bilateral hand pain and swelling and noted that x-rays of both hands were negative for fracture, dislocation, or radiopaque foreign body and were indicative of normal soft tissues in each hand. (TR. 27, 506, 507). The ALJ cited a progress note from August 10, 2017 which noted range of motion intact in all of Plaintiff's fingers and no hand joint nodules or edema present. (TR. 27, 596). The ALJ noted that Plaintiff had been prescribed Gabapentin to treat the hand pain. (TR. 27, 596). Following this discussion, the ALJ stated:

> [T]he undersigned has considered claimant's allegations of hand pain, neuropathy, and the partial amputation of digits on his nondominant hand, in addition to the medical evidence of record, and has provided for corresponding limitations, related to grip, finger, and feel, in the residual functional capacity contained herein.

(TR. 27).

As additional support for his pain/subjective allegations assessment, the ALJ relied on Plaintiff's reports of his daily activities and related inconsistencies. The ALJ noted that Plaintiff had testified that his pain limited his ability to sit, by requiring him to frequently change positions. (TR. 26). Even so, the ALJ noted that Mr. Brown had reported driving for approximately 100-150 miles without having to stop and stretch or

8

change positions. (TR. 26). The ALJ also noted Plaintiff's ability to care for his personal needs, prepare light meals, grocery shop, and lift twenty pounds. (TR. 26).

The ALJ also discussed opinion evidence, affording partial weight to State Agency physicians at the initial and reconsideration levels of disability review, who stated that Plaintiff maintained the ability to perform light work with additional environmental restrictions related to Plaintiff's asthma. (TR. 27). As explanation for the "partial weight," the ALJ stated:

> [W]hile the undersigned concurs that the claimant maintains the residual functional capacity to perform light work, the undersigned has found the claimant to have greater functional limitations than those found below, based on a review of the medical evidence of record. Specifically, the claimant received later medical treatment for his bilateral knee impairments, the first of which did not occur until after reconsideration, and the undersigned considered this treatment in the residual functional capacity herein.

(TR. 27).

Finally, the ALJ stated that he had considered the third-party statement and function report completed by Mr. Brown's daughter. The ALJ stated that the statements were given "some weight as to the statements regarding observable activities of daily living, . . . [but] to the extent her statements relay the claimant's subjective complaints, the opinion is given little weight as there is not firsthand knowledge as to the claimant's symptoms." (TR. 28). The ALJ stated: "The reported observations as to the claimant's ability to function in his activities of daily living, however, is consistent with the objective evidence. Therefore, the undersigned has afforded this opinion some weight." (TR. 28).

### C. The ALJ's Analysis of Plaintiff's Pain/Subjective Allegations is Supported by Substantial Evidence

Mr. Brown presents a multitude of arguments relating to the ALJ's pain/consistency analysis. The Court finds them all without merit.

First, Plaintiff argues that the ALJ relied only on objective evidence as a means to discount Plaintiff's pain. (ECF No. 21:6). But as discussed, this is simply not true. In addition to objective evidence, the ALJ cited Plaintiff's own testimony/allegations of pain, attempts at treatment including medication and surgical intervention, medical findings on examination, inconsistencies in the record which undermined Plaintiff's statements regarding the intensity of pain, Plaintiff's daily activities, medical opinions, and statements from a third-party. (TR. 25-28).

Second, Plaintiff argues that the ALJ "provided exertional limitations that did not meet the severe level of Mr. Brown's pain and proven impairments and limitations." (ECF No. 21:7). By means of example, Plaintiff challenges the RFC for "light work" which requires a "good deal" of walking and standing based on his testimony that he cannot stand a long time and experiences knee buckling. (ECF No. 21:7-8). But the ALJ weighed the evidence, including Plaintiff's testimony, and concluded otherwise. The Court will not re-weigh the evidence to reach a contrary decision. *See Vigil v. Colvin*, 805 F.3d at 1201 (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

Third, Plaintiff challenges the ALJ's evaluation of his hand impairment, noting that the ALJ's reliance on x-rays "[were] irrelevant when discussing Mr. Brown's grip limitations, neuropathy, and arthritis" and Plaintiff's family "agrees, stating he had

10

severe hand pain." (ECF No. 21:8, 9). But, as discussed, in assessing Plaintiff's hand impairment, the ALJ also relied on the fact that Mr. Brown had been prescribed Gabapentin for the hand pain and provided for corresponding limitations in the RFC related to Plaintiff's abilities to grip, finger, and feel. See TR. 27; 24. And the ALJ considered evidence from Plaintiff's daughter, to the extent her statements involved observable activities of daily living. (TR. 28).

Within this argument, Plaintiff also states: "No medical opinion can be ignored. If the RFC conflicts with a medical opinion, the ALJ must explain the inconsistency." (ECF No. 21:9). But Plaintiff has pointed to no "medical opinion" which conflicts with the RFC for which the ALJ owed a duty of explanation. See 20 C.F.R. §§ 404.1513(a)(2) & 416.913(a)(2) (defining "medical opinions" as statements from a medical source about what the claimant can do despite impairments and whether the claimant has certain work-related abilities and/or limitations.). Indeed, Mr. Brown seems to concede the point, but then argues that because there was no medical opinion regarding Plaintiff's hand limitations, the ALJ should have called a medical expert to provide one. (ECF No. 21:9). But the ALJ need only to employ a medical expert where "medical evidence of onset [date] is ambiguous." Blea v. Barnhart, 466 F.3d 903, 911 (10th Cir. 2006). Because onset date of Plaintiff's alleged impairments was not an issue, the ALJ did not err in failing to call a medical expert to testify regarding Plaintiff's hands.

Fourth, Plaintiff challenges the ALJ's reliance on Plaintiff's daily activities, contending that the ALJ's citation to Plaintiff's ability to prepare meals, and shop for groceries is "disingenuous[]." (ECF No. 21:15). Although the record also contains

11

evidence that Plaintiff's daily activities may have been more limited, it is the ALJ's role, not the Court's, to resolve such conflicts in the evidence. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). While "sporadic performance" of activities, like performing a few household tasks, "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations. *See, e.g., Welch v. Colvin*, 566 F. App'x 691, 694 (10th Cir. 2014) (claimant able to do light yard work, do light chores, do light cooking, grocery shop, drive, and visit her family); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat). Plaintiff has not established that the ALJ erred in relying upon Plaintiff's activities in evaluating his subjective complaints.

Fifth, citing to page 354 of the transcript, Plaintiff stated that his pain "affects his concentration. . . , and his medications make him drowsy." (ECF No. 21:10). Indeed, page 354 stated that Plaintiff's ability to handle money had been affected by his impairments because he could not concentrate. (TR. 354). But page 354 was part of a function report completed by Plaintiff's daughter, not Mr. Brown. *See* TR. 354. On a similar form completed by Mr. Brown approximately one week earlier, Plaintiff stated that his ability to handle money had not been affected by his impairments. *See* TR. 338. Furthermore, the entire function report is silent as to any side effects from medications, obviating any further related discussion. (TR. 350-357); See *Kirkpatrick v. Colvin*, 663 F.

App'x 646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

Finally, Plaintiff alleges that the ALJ failed to analyze the sum of all of his pain, in combination, arguing that had he done so, the ALJ "would have found either Mr. Brown is only capable of sedentary work, or that he is incapable of working on a regular and continuing basis." (ECF No. 21:5). But Plaintiff's argument is merely another attempt to reweigh the evidence, which the Court cannot do. *See supra*.

### D. Summary

In sum, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints and finds that the correct legal standards were applied. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible."); *cf.* SSR 16-3p, 2016 WL 119029, at *7 ("[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . ."). The ALJ did not rely only on objective evidence, but also considered Plaintiff's testimony and statements related to pain, attempts at treatment including medication and surgical intervention, medical findings on examination, inconsistencies in the record which undermined Plaintiff's statements regarding the intensity of pain, Plaintiff's daily activities, medical opinions, and statements from a

third-party. (TR. 25-28). The ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Plaintiff's symptoms did not prohibit him from performing work-related activities. Accordingly, the Court affirms the ALJ's evaluation of Plaintiff's pain and the consistency of his subjective allegations.

## VI. NO ERROR IN THE ALJ'S CONSIDERATION OF PLAINTIFF'S MENTAL IMPAIRMENTS

Mr. Brown also argues that the ALJ erred in his analysis of Plaintiff's mental impairments at step four based on:

1. The ALJ's step two finding that Plaintiff suffered from "mild" limitations in his abilities to understand, remember, and apply information; interact with others; and concentrate, persist, and maintain pace; and

2. Findings from consultative examining psychologist, Dr. Jennifer Lancaster.

(ECF Nos. 21:12-13; 26:8-10). The Court finds no error.

First, in *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), the Tenth Circuit Court of Appeals specifically stated: "in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*" and "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." (emphasis in original). Here, Plaintiff alleges a violation of *Wells*, arguing that in formulating the RFC, the ALJ failed to consider Plaintiff's "mild limitations" which the ALJ had found at step two regarding Mr. Brown's abilities to understand, remember, and apply information; interact with others; and concentrate, persist, and maintain pace. (ECF Nos. 21:12-13; 26:8-10). Although *Wells* does state

that findings of "mild" limitations at step two require further analysis at step four,[4] the Court concludes that the ALJ's step four analysis was sufficient.

In formulating the RFC, the ALJ afforded "great weight" to findings from State Agency psychologists, Drs. Joan Holloway and Carol Mahoney, both of whom concluded that Plaintiff's mental functioning was only "mildly" impaired. (TR. 28, 139, 165). The ALJ also afforded "great weight" to an opinion from the consultative examiner, Dr. Lancaster, who concluded that Plaintiff's anxiety and depression-related symptoms were only "mild" in nature. (TR. 28, 502). Based on these findings, the ALJ did not incorporate any limitations in the RFC related to Plaintiff's mental health. *See* TR. 24. In *Wells*, the Court held that the ALJ could not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells v. Colvin*, 727 F.3d at 1065. But in the instant case, the ALJ did no such thing. Instead of relying solely on his step two findings, the ALJ discussed, in detail, findings from three psychologists, in formulating his RFC at step four. Thus, the Court finds no error with respect to Plaintiff's first point of error.

Next, Mr. Brown argues that the ALJ erred in his consideration of the opinion from Dr. Lancaster. (ECF No. 21:13). The Court disagrees.

As part of her examination of Plaintiff, Dr. Lancaster had Plaintiff complete the "Montreal Cognitive Assessment" test (MoCA), on which he scored a 25, one point below "normal" range. (TR. 501, 503). Ultimately, Dr. Lancaster made the following findings:

---

[4] *Wells v. Colvin*, 727 F.3d at 1065, n.3.

> Mr. Brown endorsed several symptoms related to anxiety and depression, both of which seem mild in nature and are thought to be exacerbated by recent stressors and reported changes in physical ability. His mental health concerns are not thought to be what has interfered with work functioning or work obtainment. Any efforts towards employment would likely need to accommodate the presence of any potential physical limitations. He is likely of low average intelligence, although intellectual testing would be needed to more accurately assess cognitive abilities.
>
> Mr. Brown is thought to be able to manage his own funds responsibly. He is thought to be capable of understanding, remembering, and social interacting and adapting, although he may have some difficulty with persisting when frustrated.
>
> Related to mental health concerns, Mr. Brown's prognosis is good, especially if he were to receive psychotherapeutic treatment in an effort to help him more effectively manage his emotional concerns and recent stressors.

(TR. 502).

According to Plaintiff, the ALJ: (1) failed to incorporate Dr. Lancaster's "persistence" limitation in the RFC and (2) improperly ignored his MoCA score which demonstrated Plaintiff suffered from a cognitive impairment. (ECF No. 21:13). The Court rejects Plaintiff's arguments.

First, Dr. Lancaster stated that Mr. Brown "may" have difficulty persisting "if" he gets frustrated. (TR. 502). Dr. Lancaster's speculation on a potential difficulty under unknown circumstances is not definitive enough to warrant inclusion in the RFC. The ALJ did not err by failing to include a "persistence" limitation in the RFC.

Second, Dr. Lancaster offered no opinion related to Plaintiff's cognitive abilities based on the MoCA exam, but instead stated that "intellectual testing would be needed to more accurately assess cognitive abilities." (TR. 502). Contrary to Plaintiff's allegations, the ALJ acknowledged the MoCA score, *see* TR. 21-22, but ultimately

16

concluded that it supported only "mild" limitations, not warranting any corresponding limitations in the RFC. (TR. 22). *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (No error by ALJ failing to include limitations which were belied by the medical record). The ALJ did not err by "ignoring" the MoCA results and remand is not warranted based on the ALJ's evaluation of Plaintiff's mental impairments.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on September 10, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE